The **TORRINGTON COMPANY**, Plaintiff,

Federal–Mogul Corporation, Plaintiff–Intervenor,

v.

**UNITED STATES**, Defendant,

SKF USA Inc. and SKF GmbH; GMN Georg Muller Nurnberg AG; NTN Bearing Corporation of America and NTN Kugellagerfabrik (Deutschland) GmbH; Caterpillar Inc.; FAG Kugelfischer Georg Schaefer KGaA; Ina Walzlager Schaeffler KG and Ina Bearing Company, Inc.; Messerschmitt–Boelkow–Blohm, GmbH and MBB Helicopter Corporation, Defendant–Intervenors.

Court No. 91–08–00567.
Slip Op. 94–38.

United States Court of International Trade.

March 4, 1994.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Velta A. Melnbrencis and Jane E. Meehan); of counsel: John D. McInerney, Acting Deputy Chief Counsel for Import Administration, Dean A. Pinkert, Stephen J. Claeys, Douglas S. Cohen and Thomas H. Fine, Attorney–Advisors, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Washington, DC, for defendant.

Howrey & Simon (Herbert C. Shelley, Scott A. Scheele, Alice A. Kipel, Juliana M. Cofrancesco and Thomas Trendl), Washington, DC, for defendant-intervenors SKF USA Inc. and SKF GmbH.

Grunfeld, Desiderio, Lebowitz & Silverman (Bruce M. Mitchell and Philip S. Gallas), New York City, for defendant-intervenor GMN Georg Muller Nurnberg AG.

Barnes, Richardson & Colburn (Robert E. Burke, Donald J. Unger, Kazumune V. Kano and Diane A. MacDonald), Chicago, IL, for defendant-intervenors NTN Bearing Corporation of America and NTN Kugellagerfabrik (Deutschland) GmbH.

Powell, Goldstein, Frazer & Murphy (Richard M. Belanger and Neil R. Ellis), Washington, DC, for defendant-intervenor Caterpillar Inc.

Grunfeld, Desiderio, Lebowitz & Silverman (Max F. Schutzman, David L. Simon, Andrew B. Schroth and Matthew L. Pascocello), New York City, for defendant-intervenor FAG Kugelfischer Georg Schafer KGaA.

Arent Fox Kintner Plotkin & Kahn (Stephen L. Gibson and Eleanor Pelta), Washington, DC, for defendant-intervenors INA Walzlager Schaeffler KG and INA Bearing Company, Inc.

Rogers & Wells (William Silverman and Ryan Trainer), Washington, DC, for defendant-intervenor Messerschmitt–Boelkow–Blohm, GmbH and MBB Helicopter Corporation.

---

Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Wesley K. Caine, Myron A. Brilliant, Geert De Prest, Margaret E.O. Edozien, Robert A. Weaver, David Scott Nance and Amy S. Dwyer), Washington, DC, for plaintiff The Torrington Company.

Frederick L. Ikenson, P.C. (Frederick L. Ikenson, J. Eric Nissley and Joseph A. Perna, V), Washington, DC, for plaintiff-intervenor Federal–Mogul Corporation.

## OPINION

TSOUCALAS, Judge:

Plaintiff, The Torrington Company ("Torrington"), moves pursuant to Rules 1 and 7 of the Rules of this Court for modification of this Court's decision in *Torrington Co. v. United States*, 17 CIT ——, 832 F.Supp. 379 (1993). Torrington asks this Court to remand this case to the Department of Commerce, International Trade Administration ("ITA"), to recalculate all antidumping duty margins without allowing a deduction for pre-sale inland freight in the calculation of foreign market value ("FMV") pursuant to the United States Court of Appeals for the Federal Circuit's ("Federal Circuit") decision in *Ad Hoc Comm. of AZ–NM–TX–FL Producers of Gray Portland Cement v. United States*, 13 F.3d 398 (Fed.Cir.1994). *Motion of The Torrington Company to Modify Judgment and Issue a Second Remand Order* ("*Torrington's Motion*").

### Background

In *Torrington*, 17 CIT at ——, 832 F.Supp. at 387, this Court stated that:

The reasoning of this Court in upholding the ITA's treatment of pre-sale inventory carrying costs in this case is equally applicable to the ITA's treatment of pre-sale movement expenses. The ITA's decision to compare U.S. price to home market price at a contemporaneous point in the chain of commerce is reasonable. *Torrington Co.*, 17 CIT at ——, 818 F.Supp. [1563] at 1576 [ (1993) ]. In this case, the ITA has chosen an ex-factory price as the contemporaneous point in the chain of commerce. In order to make this comparison certain expenses need to be removed from both U.S. and home market prices. This Court finds nothing unreasonable in the ITA's removal of pre-sale movement expenses from both U.S. and home market prices as measured from the same point in the chain of commerce, in this case ex-factory. *Torrington Co.*, 17 CIT at ——, 818 F.Supp. at 1576; *Ad Hoc Comm.*, 16 CIT at ——, 787 F.Supp. [208] at 211–13 [ (1992) ]. This method of treating pre-sale home market movement expenses has also been specifically upheld by this court in a

well reasoned opinion in *Nihon Cement Co. v. United States*, 17 CIT ——, ——, 1993 WL 185208 (May 25, 1993).

Therefore, this Court affirms the ITA's deduction of SKF's pre-sale movement expenses from FMV.

### Discussion

The Federal Circuit in *Ad Hoc Comm.* stated:

In the circumstances of this case, we believe that had Congress intended to deduct home-market transportation costs from FMV, it would have made that intent clear. FMV and USP [United States price] are intimately related concepts, given full meaning only by their relationship to one another. The Antidumping Act revolves around the difference between the two. *See* 19 C.F.R. § 353.2(f)(1) (1993) (defining dumping margin with reference to USP and FMV). In slightly different forms, the USP provision, 19 U.S.C. § 1677a, and the FMV provision, 19 U.S.C. § 1677b, were passed together as part of the original Antidumping Act, 1921, ch. 14, 42 Stat. 11 (1921). From the Act's beginning, therefore, it is likely Congress has considered one only with reference to the other and has been well aware of any differences between them. That Congress included a deduction for transportation costs from USP but not from FMV leads us to conclude that Congress did not intend pre-sale home-market transportation costs to be deducted from FMV.

*Ad Hoc Comm.*, 13 F.3d at 401–02 (footnote omitted).

Torrington argues that the Federal Circuit's decision in *Ad Hoc Comm.* "held that the Department of Commerce lacks authority under the circumstance-of-sale provision (19 U.S.C. § 1677b (a)(4)) to adjust foreign market value for pre-sale inland freight expense." *Torrington's Motion* at 1–2. Therefore, Torrington argues that this Court's decision affirming the ITA's grant of an adjustment to FMV for pre-sale inland freight was in error and this Court should modify its decision on this issue and remand this case back to the ITA ordering the ITA to recalcu-

late all antidumping duty margins without allowing a deduction for pre-sale inland freight in the calculation of FMV. *Id.* at 2.

Defendant and defendant-intervenors SKF USA Inc. and SKF GmbH ("SKF") oppose Torrington's motion. Specifically, defendant and SKF argue that the Federal Circuit's decision in *Ad Hoc Comm.* only applies to adjustments to FMV for pre-sale inland freight in situations where FMV has been calculated based upon purchase price.[1] Defendant and SKF point out that the Federal Circuit explicitly limited its decision on this issue to the calculation of FMV based upon purchase price and not when exporter's sales price ("ESP") is used to calculate FMV. *Defendant's Opposition to Plaintiff's Motion to Modify Judgment and Issue a Second Remand Order ("Defendant's Opposition")* at 2; *Defendant–Intervenors' Opposition to Plaintiff's Motion to Modify Judgment and Issue a Second Remand Order ("SKF's Opposition")* at 2–4.

SKF points out that the adjustment of FMV for pre-sale inland freight in ESP situations has been specifically upheld by the Federal Circuit in *Smith–Corona Group v. United States,* 713 F.2d 1568 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984). *SKF's Opposition* at 2.

Defendant and SKF also argue that the Federal Circuit's decision on this issue was based on the ITA's stated rationale for its decision, *i.e.,* the ITA's inherent authority to fill gaps in the statutory framework to achieve the purposes of the statute, and not on the circumstance of sale provision found at 19 U.S.C. § 1677b(a)(4)(B) (1988). *Defen-*

*dant's Opposition* at 2; *SKF's Opposition* at 4–7.

SKF argues that 19 U.S.C. § 1677b(a)(1) (1988) and 19 U.S.C. § 1677a(d)(1)(A) (1988) provide statutory authority for the ITA to adjust FMV for pre-sale inland freight. *SKF's Opposition* at 4–5.

SKF also argues that the circumstance of sale provision at 19 U.S.C. § 1677b(a)(4)(B) also provides authority for an adjustment in this case as SKF alleges that the record shows that SKF's pre-sale inland freight expenses were directly related to sales. *Id.* at 6–7.

Defendant points out that Torrington challenged only the ITA's treatment of SKF's pre-sale inland freight expenses. Therefore, defendant argues that Torrington cannot now request this Court to order the recalculation of all the other parties' dumping margins. *Defendant's Opposition* at 2.

Finally, defendant argues that the ITA has not had an opportunity to consider its position on this issue in light of the Federal Circuit's decision in *Ad Hoc Comm.* Defendant requests this Court to remand this issue to the ITA so it can "consider the appellate decision and its impact upon this case and whether other alternatives exist for treatment of pre-sale inland freight expenses." *Id.* at 2.

■ This Court finds that Torrington's characterization of the Federal Circuit's decision in *Ad Hoc Comm.* is incorrect on certain points. First, the *Ad Hoc Comm.* court specifically noted that it was not ruling on whether the ITA has authority to adjust FMV for pre-sale inland freight pursuant to

---

1. Purchase price and exporter's sales price ("ESP") are the two types of United States price. USP, purchase price and ESP are defined at 19 U.S.C. § 1677a (1988):

   **(a) United States price**
   [T]he term "United States price" means the purchase price, or the exporter's sales price, of the merchandise, whichever is appropriate.
   **(b) Purchase price**
   "[P]urchase price" means the price at which merchandise is purchased, or agreed to be purchased, prior to the date of importation, from a reseller or the manufacturer or producer of the merchandise for exportation to the United States.

   **(c) Exporter's sales price**
   "[E]xporter's sales price" means the price at which merchandise is sold or agreed to be sold in the United States, before or after the time of importation, by or for the account of the exporter....

   The purchase price is normally used as USP where the transaction prior to importation is between unrelated parties, or at arm's length. The exporter's sales price will be used as the USP when the U.S. importer and the foreign seller are "related parties." *See* 19 U.S.C. § 1677(13) (1988). The exporter's sales price will be the price at which the merchandise is first sold to an unrelated purchaser in the United States. 19 U.S.C. § 1677a(c).

the circumstance of sale provision at 19 U.S.C. § 1677b(a)(4)(B). *Ad Hoc Comm.*, 13 F.3d at 401 n. 8. Second, the *Ad Hoc Comm.* court limited its decision to the calculation of FMV in purchase price situations only. *Id.* at 401. Therefore, this Court finds that there is no basis for remanding this case to the ITA in regard to situations where FMV was calculated based upon ESP.

■ It is a cardinal rule of administrative law that an agency should be allowed to decide an issue for itself before a court addresses that issue. *McKart v. United States,* 395 U.S. 185, 194, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969). This Court agrees with the ITA that it should be given the opportunity to address this issue first in light of the Federal Circuit's decision in *Ad Hoc Comm.*

NTN alleges in its Comments on the ITA's Redetermination on Remand that the ITA used the sample factor on NTN's total sales, creating a huge Potential Uncollected Dumping Duties number. NTN also asks this Court to remand this matter so that this simple clerical error may be corrected. The ITA, on this remand, is also to correct this error if, in fact, it finds that it made this clerical error.

### Conclusion

Therefore, this case is remanded to the ITA to allow the ITA to determine whether it has statutory authority to adjust FMV, calculated using purchase price, for pre-sale inland freight in light of *Ad Hoc Comm.* It is also remanded to the ITA to correct any clerical errors that may have been made as far as NTN is concerned. Remand results are to be filed with this Court within sixty (60) days after the date of entry of this Court's decision regarding the ITA's remand results on the value added tax issue which is currently pending before this Court. Comments or responses by the parties are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.